| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>Donald F. Campbell (DC8924)<br>Giordano, Halleran & Ciesla, P.C.<br>125 Half Mile Road, Suite 300<br>Red Bank, NJ 07701<br>Tel: (732) 741 3900<br>Fax: (732) 224 6599<br>dcampbell@ghclaw.com<br>*Attorneys for Laurelton Village Realty, LP*<br>*d/b/a Laurelton Village Apartments*<br><br>In Re:<br><br>TAMEKA A. WALKER<br><br>Debtor. | Case No.: **24-16415 (ABA)**<br><br>Chapter:  13<br><br>Hearing Date: 8/28/24 at 9:00 AM<br><br>Judge:  Andrew B. Altenburg, Jr., U.S.B.J |

**OBJECTION TO CHAPTER 13 PLAN**

1. I am the attorney for Laurelton Village Realty, LP d/b/a Laurelton Village Apartments, creditor in the above-captioned matter and submit the following in opposition to the Debtor's proposed Chapter 13 Plan.

**BACKGROUND**

2. On April 9, 2024, Laurelton Village Realty, LP d/b/a Laurelton Village Apartments ("*Laurelton*") entered into a residential lease agreement ("*Lease*") with TAMEKA A. WALKER ("*Debtor*") for the rental of 601 North Black Horse Pike, #K7, Williamstown, New Jersey 08094 (the "*Apartment*").

3. Pursuant to the terms of the Lease, the Debtor is obligated to pay monthly rent of $1,657.00, plus $10.00 insurance fee, $25.00 cat fee, and $35.00 dog fee, for a total of $1,727.00. The Lease further provides that if any rental payment is not received by Laurelton by the fifth day

1

of the month, Laurelton assesses a late charge of $50.00

4. The Debtor failed to make timely payments pursuant to the terms of lease resulting in a pre-petition balance of $5,500.00, which includes attorney's fees of $600.00. A copy of Laurelton Village Realty, LP d/b/a Laurelton Village Apartments' Proof of Claim is attached as **Exhibit A.**

5. The Debtor also has outstanding post-petition rental arrears.

## CHAPTER 13 PLAN

6. On June 25, 2024, the Debtor filed a Petition under Chapter 13 of the United States Bankruptcy Code.

7. Pursuant to the Debtor's Chapter 13 Plan, the Debtor has proposed to assume the obligations contained in the Lease.

8. In this matter, the Debtor proposes paying Laurelton's claim fourth in priority behind the Chapter 13 Trustee, the Debtor's counsel, and any priority unsecured claims.

9. The Debtor has included attorney's fees of $4,313.00. Without including Trustee's Commissions, it would take the Debtor nearly two (2) years or approximately twenty-six (26) months to satisfy the attorney's fees in full.

10. Therefore, Laurelton would not receive a single payment for over two (2) years and would not be cured in full ($5,500.00) until approximately five years after confirmation.

11. Debtor's proposal is not feasible or "prompt."

12. Further, Laurelton objects to any payments to Debtor's counsel prior to Laurelton's receipt of all cure payments.

**A. <u>Prompt Cure</u>**

13. If there has been a default in an unexpired lease the Debtor may not assume such lease unless, at the time of assumption of such lease, the Debtor "cures, or provides adequate assurance that [the Debtor] will promptly cure, such default…" 11 <u>U.S.C.</u> § 365(b)(1)(A).

14. Section 365(b)(1) of the Bankruptcy Code does not define the term "promptly." "The term probably suggests a shorter period of time than the "reasonable time" to cure defaults in a long-term debt under § 1322(b)(5). Whether a cure is prompt must be determined on the facts and circumstances of each case. The courts have consistently held that a proposed cure over a period of two years or more was not "prompt" for purposes of § 365(b)(1)." <u>In re DiCamillo</u>, 206 <u>B.R.</u> 64, 72 (Bankr. D.N.J. 1997) (citations omitted).

15. In most cases a period exceeding one year should not be considered prompt. *See* <u>Norton Bankruptcy Law and Practice 3d</u> § 46:29 (2004).

16. The issue of promptness ultimately depends upon the facts and circumstances of each case. In determining whether a cure is "prompt," many courts consider several factors, including a Debtor' past financial performance, any inequitable conduct engaged by the non-Debtor party, and the remaining term of the lease or relationship between the parties. *See* <u>In re Uniq Shoes Corp.</u>, 316 <u>B.R.</u> 748 (Bankr. S.D.Fla. 2004) <u>citing</u> <u>In re Embers 86th Street, Inc.</u>, 184 <u>B.R.</u> 892, 900-901 (Bankr. S.D.N.Y. 1995) <u>and</u> <u>In re R/P International Technologies, Inc.</u>, 57 <u>B.R.</u> 869 (Bankr. S.D.Ohio 1985).

17. Accordingly, Laurelton objects to confirmation of the Debtor's Chapter 13 plan based on his failure to promptly cure the arrears due to Laurelton pursuant to § 365(b)(1)(A).

B. **Laurelton Village Realty, LP d/b/a Laurelton Village Apartments' Administrative Expense Claim**

18. As set forth above, Debtor also states in their Chapter 13 plan that the Standing Trustee is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant. [Doc. 13, pg. 5].

19. Laurelton objects to Debtor's improper attempt to limit Laurelton's claim if, after Debtor assumes the Lease, Debtor subsequently moves post-confirmation to modify the plan to reject the Lease.

20. Under section 365(g)(2)(A) of the United States Bankruptcy Code:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the Debtor constitutes a breach of such contract or lease…
>
> (2) <u>if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13</u> of this title—
>
> (A) if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, <u>at the time of such rejection</u>….

11 U.S.C. § 365(g)(2)(A) (emphasis added).

21. Section 365(g)(2) applies "to claims for damages arising from a Debtor's rejection of a lease that was previously assumed. This provision states that where an assumed lease is later rejected, the resulting damages are construed as arising post-petition at the time of such breach." <u>In re Wright</u>, 256 B.R. 858, 859 (Bankr.W.D.N.C. 2001).

22. In <u>In re Pearson</u>, 90 B.R. 638, 642 (Bankr.D.N.J. 1988), the court explained the following:

> [T]he assumption [is] an act of administration that create[s] an obligation of the post-petition bankruptcy estate which is legally distinct from the obligations of the parties prior to the assumption. Any breach of the assumed obligations, whether in the form of a default or a formal rejection of the lease thereby constitutes a breach

4

>by the post-petition Debtor of post-petition obligations. This post-petition breach or rejection after a prior assumption is afforded priority as an administrative expense claim under 11 U.S.C. § 365(g)(2)(A).
>
>Id. (internal citations omitted).

23. If the Debtor fails to pay post-petition rent, Laurelton is entitled to relief from the automatic stay so that it may proceed with an eviction action against the Debtor. See Zagata Fabricators, Inc. v. Superior Air Products, 893 F.2d 624, 627-28 (3d Cir. 1990).

24. Assuming, hypothetically, that the Debtor is evicted and subsequently moves to modify the Chapter 13 plan to reject the Lease that was previously assumed, Laurelton will have an administrative claim for its damages (i.e., the full amount of the pre-petition and post-petition arrears) resulting from the post-petition breach of the Lease under section 365(g)(2). See Pearson, 90 B.R. at 645 (holding that Debtor's post-petition breach under section 365(g)(2)(A) gave rise to an administrative claim in favor of lessor for the full amount of resultant damages flowing from rejection of the lease).

25. Moreover, should the Debtor not reject the Lease, but simply fail to pay post-petition rent obligations as they become due, Laurelton will still be entitled to an administrative expense claim for the unpaid post-petition amounts. See Zagata Fabricators, Inc, 893 F.2d at 627 ("There is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled.").

26. Therefore, to the extent Debtor is attempting to prevent Laurelton from receiving payment through the plan for any such administrative expense claims, Laurelton further objects to the proposed Chapter 13 plan.

**RELIEF REQUESTED**

27. Based upon the foregoing, Laurelton Village Realty, LP d/b/a Laurelton Village Apartments requests the Court reject the Debtor's proposed Chapter 13 Plan unless the Debtor immediately cures or seeks to promptly cure the arrears and provides adequate assurance of same and removes the provision of the Chapter 13 Plan intended to limit Laurelton Village Realty, LP d/b/a Laurelton Village Apartments' potential administrative expense claim.

                                       **GIORDANO HALLERAN & CIESLA, P.C.**
                                       Attorneys for Laurelton Village Realty, LP d/b/a
                                       Laurelton Village Apartments

                                       By:*/s/ Donald F. Campbell, Jr.*
                                         DONALD F. CAMPBELL, JR.

Dated: August 21, 2024